Woodworth vs. Mills.

WOODWORTH vs. MILLS.

*September 4 — September 23, 1884.*

*Malicious prosecution — Entry of* nolle prosequi *— Evidence — Probable cause — Court and jury.*

1. Until the final determination of a criminal action no action for the malicious prosecution thereof can be maintained.
2. The entry of a *nolle prosequi* for any reason other than some irregularity or informality in the information itself, is an end to the prosecution of that case, and, unless such *nolle* is vacated at the same term, the defendant can be further prosecuted for the same offense, if at all, only upon a new complaint, arrest, and examination.
3. Such entry of a *nolle prosequi* is, therefore, such a final determination of the action that an action for its malicious prosecution may be maintained.
4. In an action for the malicious prosecution of a criminal action, the defendant offered to show, on the cross-examination of the person

whom, it was alleged, he had instigated to make the criminal complaint, that before making such complaint the witness had stated the facts he expected and believed he could prove to the district attorney, and had been advised by him that there was sufficient ground for making the same. The court rejected the evidence as not proper cross-examination, but afterwards permitted the defendant to examine the witness fully on that subject in his own behalf. *Held*, that the error, if any, in refusing to permit such cross-examination would not work a reversal.

5. The same witness, after having testified that he did not make the complaint and commence the criminal action by reason of anything said to him by the defendant, was asked whether, if he had learned all the facts which he did learn before making the complaint, and had had no conversation with the defendant, he would have brought the action just as he did. *Held*, that such question, asked for a mere opinion, which was inadmissible.

6. In such action evidence of admissions by the defendant tending to show that he was the instigator of the prosecution and that it was without probable cause was admissible.

7. The offense charged in the criminal complaint having been the larceny of a water-wheel of the value of $300, evidence that such wheel was in fact worth only from $2 to $5 was admissible in the action for malicious prosecution as tending to show malice.

8. Evidence as to the true ownership of the property alleged to have been stolen was also admissible on the part of the plaintiff, the defendant having stated that he instituted the criminal proceedings to establish his title thereto.

9. In an action for the malicious prosecution of a criminal action, evidence of the previous good character of the plaintiff is admissible as tending to show that such prosecution was without probable cause.

10. Evidence that the defendant had known the plaintiff for several years before the criminal prosecution was commenced raises a presumption that he knew his reputation.

11. If the defendant in an action for the malicious prosecution of a criminal action instigated such prosecution without probable cause, the fact that the person who, at his instigation, made the criminal complaint had probable cause to believe it to be true, is no defense.

12. Where the facts bearing upon the question of probable cause are not all admitted or established by undisputed evidence, the question is one for the jury.

13. A party cannot, on appeal, take advantage of an erroneous instruction given at his own request.

APPEAL from the Circuit Court for *Jackson* County.

The case is stated in the opinion. There was a verdict for the plaintiff, assessing his damages at $1,000, and from the judgment entered thereon the defendant appealed.

For the appellant there was a brief by *Johnson & Ainsworth*, attorneys, and *J. M. Morrow* and *S. U. Pinney*, of counsel, and oral argument by *Mr. Morrow* and *Mr. Pinney*.

For the respondent there was a brief by *Bleekman & Bloomingdale*, and oral argument by *Mr. Bleekman* and *Mr. W. F. Vilas*. They argued, among other things, that the entry of a *nolle prosequi*, particularly if done by or under an order of the court allowing it, is such a termination of a criminal action that an action for malicious prosecution can be maintained. The reasonable rule seems to be that the technical prerequisite is only that the particular prosecution be disposed of in such a way that it cannot be revived, and the prosecutor, if he proceeds further, will be put to a new one. Cooley on Torts, 186; Moak's Underhill on Torts, 170, 171; *Brown v. Randall*, 36 Conn. 56; *Stanton v. Hart*, 27 Mich. 539; *Moulton v. Beecher*, 8 Hun, 100; *Fay v. O'Neill*, 36 N. Y. 11; *Clark v. Cleveland*, 6 Hill, 344; *Richter v. Koster*, 45 Ind. 440; *Rice v. Ponder*, 7 Ired. Law, 390; *Yocum v. Polly*, 1 B. Mon. 358; *Cotton v. Wilson*, Minor, 203; *Driggs v. Burton*, 44 Vt. 124; *Hatch v. Cohen*, 84 N. C. 602.

TAYLOR, J. The respondent brought an action in the circuit court of Jackson county against the appellant for malicious prosecution for causing him to be arrested upon a charge of grand larceny.

The complaint alleges that one Daniel T. Hockert made the complaint upon which the arrest was made, but charges that the defendant maliciously and without probable cause advised and caused the said Hockert to make such complaint and have the plaintiff arrested. The complaint then alleges the issuing of a warrant by a justice of the peace

against the plaintiff for larceny, his arrest thereon, the fact that he was brought before the justice and an examination had; that the justice after examination adjudged that an offense had been committed and that there was probable cause for believing the plaintiff guilty, and thereupon held him to bail for his appearance at the next regular term of the circuit court of said county; that he gave bail as required by the justice; that at said next term the defendant falsely and maliciously, and without probable cause, caused and procured the district attorney of said county to present and file an information against the said plaintiff on said charge of larceny, setting out the substance of such information. It then alleges that the trial of the cause was continued at the term at which the information was presented, by the consent of the parties, to the next regular term, and that, at the term to which said cause was continued, the district attorney, with the leave of said court, entered a *nolle prosequi* in said action, and that said action was then and there determined with the advice of the defendant and abandoned by him, and that since that time he has not further prosecuted said charge and complaint. The complaint charges that the arrest and examination was extensively published among his neighbors and friends by the procurement of the defendant; alleges that he was greatly injured in his good name, and otherwise suffered damages by way of the payment of counsel fees and other necessary expenses in defending himself against said charge.

The answer is, first, a general denial of every allegation, matter, statement, or thing in said complaint contained, except as hereinafter expressly admitted. The answer then alleges and charges the fact to be, that Daniel T. Hockert made complaint in writing to the justice, setting forth the substance of such complaint, the issuing of a warrant upon such complaint, the arrest of the plaintiff, his examination before the justice, the judgment of the justice upon such

hearing; that he held the defendant to bail for his appearance at the next term of the circuit court; that at said next term an information was presented against the plaintiff by the district attorney; that the trial on said information was continued until the March term, on the application of the plaintiff in this action; that at the next or March term, 1882, the case was continued, on the application of the district attorney, to the September term of the same year, and at such September term the district attorney, with leave of the court, entered a *nolle prosequi* in said action *without the consent or advice of the defendant*, and that said action has not been commenced again to the knowledge of the defendant.

The answer then further alleges that the said Hockert, before he made his complaint to the justice, stated all the facts and circumstances which he could or believed he could prove against the plaintiff in this action, tending to show him guilty of the larceny charged in the complaint before the justice, and that, after making such statement, the district attorney advised said Hockert that the plaintiff was guilty of said larceny, and was further advised by said attorney to make and file the complaint against the said plaintiff, and that, relying upon the advice of the district attorney, the said Hockert made said complaint; and, as a further answer, the defendant alleges and charges that at the time said criminal complaint was made against the said plaintiff, from all the facts and circumstances claimed at the time and up to the present time, the defendant believed, and still believes, that there was not only probable cause to believe the plaintiff guilty of the offense charged, but that the sworn testimony of the witnesses on said examination before the justice tended to prove conclusively to this defendant that the plaintiff was and is guilty of the offense charged against him in said complaint, warrant, and information; and he therefore "alleges and charges the fact to be,

on information and belief, that the plaintiff is now, and was at the time of the commencement of the criminal action, guilty of the offense therein charged," etc.

Upon the issues made by the pleadings the parties went to trial in the circuit court, and before any evidence was given on the part of the plaintiff, the defendant objected to the reception of any evidence in the case, on the ground that the complaint does not state facts sufficient to constitute a cause of action. The point raised by the learned counsel for the appellant upon this objection is that the complaint fails to show such a termination of the criminal action against the plaintiff as authorizes him to maintain an action for malicious prosecution against the prosecutors of such criminal action.

It is not denied by the learned attorney for the respondent that it is necessary to show a final determination of the criminal action against the plaintiff before the action for the malicious prosecution of the same can be maintained by him. *Miller v. Milligan*, 48 Barb. 30; *Pratt v. Page*, 18 Wis. 337, 344; *Winn v. Peckham*, 42 Wis. 493, 499. It is unnecessary to cite other authorities to sustain this proposition, as both parties admit that such is the rule of law, and the authorities are not in conflict upon that point. But it is claimed by the learned counsel for the appellant that the facts stated in the complaint do not show a final termination of the criminal action upon which this suit is founded, and they rely upon the following authorities to sustain their contention: *Bacon v. Towne*, 4 Cush. 217; *Parker v. Farley*, 10 Cush. 279; *Brown v. Lakeman*, 12 Cush. 482; *Parker v. Huntington*, 2 Gray, 124; *Dennehey v. Woodsum*, 100 Mass. 195, 198; *Cardival v. Smith*, 109 Mass. 158. These cases, as well as others cited by the appellant, would seem to hold that the entering of a *nolle prosequi* by the district attorney, with the consent and leave of the court, upon the indictment or information for a crime, is not a final determination

of such criminal action, and therefore no action for malicious prosecution can be maintained, because it is urged that the defendant may be again arrested upon such indictment or information, and tried, and that upon such trial the accused might be convicted, which conviction would be conclusive evidence that there was probable cause for the prosecution; and upon this point the learned counsel for the appellant cite the following cases: Whart. Crim. Law. § 513; *State v. Mc-Neill*, 3 Hawks, 183; *Comm. v. Wheeler*, 2 Mass. 172; *Teague v. Wilks*, 3 McCord, 461; *Smith v. Shackleford*, 1 Nott & McC. 36; *Heyward v. Cuthbert*, 4 McCord, 354; *State v. Blackwell*, 9 Ala. 79; *Wortham v. Comm.* 5 Rand. (Va.), 669; *Lindsay v. Comm.* 2 Va. Cas. 345; *State v. Haskett*, 3 Hill (S. C.), 95; *U. S. v. Shoemaker*, 2 McLean, 114.

It will be seen by an examination of these authorities that the question as to whether, after a *nolle prosequi* had been entered upon an indictment or information, the party could be afterwards proceeded against upon the same indictment or information, was not the point decided; and if such rule was stated as the law, it was only incidental to the real question. All the authorities hold that a *nolle prosequi*, entered with leave of the court before the jury is impaneled in the case, is not a bar to a subsequent prosecution for the same offense upon a new indictment or information, and there are a few cases which hold that the *nolle prosequi* may be recalled, and the defendant tried upon the same indictment or information. All that was decided in *U. S. v. Shoemaker, supra,* was that a *nolle prosequi* entered on an indictment was not a bar to a subsequent indictment for the same cause. Such was the fact, also, in the case of *Comm. v. Wheeler, supra.* In this last case Justice SEWELL says: "A *nolle prosequi* is often entered by the attorney for the government on discovering some informality in his indictment. I consider that it applies to the particular indictment only, and not to the offense." SEDGWICK, J., says: "I

think it has been held that a *nolle prosequi* is not a bar even to the indictment on which it is entered, though I believe this opinion has been since overruled." Bishop, in his work on Criminal Procedure, in speaking of the effect of the entry of a *nolle prosequi*, says: "We see, therefore, that a *nolle prosequi* during trial bars a subsequent prosecution for the same offense, whether on the same or any other indictment. *A fortiori*, it does, when entered between the verdict and sentence. Entered before trial, it and the proceedings it discontinues are no impediment to a subsequent prosecution for the same offense. It simply puts an end to the particular indictment, count, or part of a count to which it is applied, without prejudice to new proceedings; but the part or whole of the present proceeding which has been reached by it cannot be revived. In the language of an old case, 'the king cannot afterwards proceed in the same suit, but he may begin anew.'" See sec. 1395. In a note to this section, the learned author refers to some of the cases cited by the learned counsel for the appellant in this case, which seem to hold that proceedings might be afterwards had upon the same indictment or information, and disapproves what was said upon that question in those cases; and cites the following cases to sustain his statement in the text, that "the *nolle prosequi* puts an end to the particular indictment, count, or part of a count to which it is applied, without prejudice to new proceedings; but the part or whole of the present proceeding which has been reached by it cannot be revived." *Rex v. Pickering,* stated Hardres, 83; *Bowden v. State,* 1 Tex. App. 137; *State v. Shilling,* 10 Iowa, 106; *Comm. v. Dowdican's Bail,* 115 Mass. 133; *Brittain v. State,* 7 Humph. 159; *Reg. v. Mitchell,* 3 Cox's Crim. Cas. 93; *State ex rel. Graves v. Primm,* 61 Mo. 166; *Moulton v. Beecher,* 8 Hun, 100; *Reg. v. Allen,* 1 Best & S. 850.

In the case last cited, which was decided in 1862, COCKBURN, C. J., says: "No instance has been cited, and there-

fore it may be presumed that none can be found, in which, after a *nolle prosequi* has been entered by the fiat of the attorney general, this court has taken upon itself to award fresh process, or has allowed any further proceedings to be taken on the indictment." CROMPTON, J., says: "The *nolle prosequi* being on the record, there is an end of this prosecution; but the question remains whether that is final or not. I rather think, however, that Mr. Archbold, in his Practice of the Crown Office, is right when he says (p. 62) 'that it has the effect of putting an end to the prosecution altogether.' It is said that, notwithstanding that the attorney general may interfere in any prosecution in any court in England and stop it, the court may afterwards award process. *Goddard v. Smith*, 6 Mod. 261, only decided the entry of a *nolle prosequi* is not a decision on the merits of the prosecution. The court, in the course of the argument, said the attorney general might issue new process upon the indictment; but, as I have said, I rather think the *nolle prosequi* puts an end to the prosecution." BLACKBURN, J., gave no opinion on this point. The remarks of the judges above quoted were made in a case where the attorney general had acted without the leave of the court.

It seems to us very clear that the rule as stated by Mr. Bishop and the judges in the cases above cited must be the true rule, when the *nolle prosequi* is entered upon an indictment for any cause. If it be entered because the indictment is bad upon its face for want of sufficient allegations, either in form or substance, then there can be no reason for arresting the defendant for trial upon such imperfect indictment. And if the *nolle prosequi* is entered because there is no proof of the guilt of the defendant, he certainly ought not to be proceeded against further, and the action, though a criminal one, is discontinued for all purposes. Whether in this state, where the information is presented by the attorney for the state after an examination of the defendant

before a justice, and a *nolle prosequi* is entered because of some imperfection in the information which renders it bad in law, a new information may not be presented without a new complaint and examination of the defendant, need not be determined in this case; as we think it must be presumed from the evidence in the case that the *nolle prosequi* was entered by the district attorney with the leave of the court because the attorney and court were satisfied that there was not sufficient proof of the defendant's guilt. And when the prosecution is discontinued for that reason, or for any other reason except for some irregularity or informality in the information itself, such discontinuance puts an end to all further proceedings in that case; and if the defendant can be thereafter further prosecuted for the offense charged in the information, it must be upon a new complaint, arrest, and examination. In this view of the case the entry of the *nolle prosequi* with the leave and consent of the court was a final determination of that action, within the meaning of the rule laid down for the government of actions for malicious prosecution.

In the case of *Moulton v. Beecher*, 8 Hun, 100, above cited, a complaint for malicious prosecution was sustained upon demurrer, which alleged that a *nolle prosequi* had been entered in the criminal action in substantially the same language used in the case at bar, and the court held the complaint sufficient.

We think, upon principle as well as authority, the entry of a *nolle prosequi* upon an information, not upon the ground that the information is insufficient upon its face, is an end to the prosecution of that case, and that such *nolle prosequi* cannot afterwards be vacated, and further proceedings had in that case, unless vacated at the same term at which it is entered. Bishop on Crim. Proc. § 1396; *State v. Nutting*, 39 Me. 359; *Parry v. State*, 21 Tex. 746. The objection made to the sufficiency of the complaint was properly overruled.

The record shows quite a large number of objections by the appellant to the introduction of evidence on the part of the plaintiff, as well as exceptions taken to the refusal of the court to permit evidence offered by the defendant. The exceptions to the exclusion of evidence are the following: The witness Hockert was called by the plaintiff, and on his cross-examination the defendant offered to show by him that previous to his making the criminal complaint he stated the facts he expected and believed he could prove to the district attorney, and was advised by him, before he made the complaint, that there were sufficient grounds for making the same. The court rejected the evidence on the ground that it was not proper cross-examination. We are inclined to think the judge was right in his ruling; but, if not, the defendant was not injured by it, for the reason that he was allowed afterwards to examine the witness, in his own behalf, fully upon that subject. Admitting that such evidence was material to the defense (which is perhaps doubtful), as the whole case shows that the witness was a willing witness for the defendant, this court would not be justified in reversing the judgment because the defendant was refused the privilege of cross-examining the witness on that subject.

The defendant also asked this witness, who was the apparent prosecutor of the criminal action, the following question: " If you had learned all these facts that you did learn before you made the complaint, and had had no conversation whatever with *Mr. Mills* about the matter, would you have brought the action just the same as you did?" This was objected to by the plaintiff and excluded by the court. The witness had already testified " that he did not make the complaint and commence the criminal action by reason of anything said to him by *Mr. Mills.*" This was, we think, as far as the witness should have been permitted to answer this general proposition. He had also testified as to what he had learned about the matter from other parties as well

as from *Mr. Mills*, the defendant in this action, and that he had consulted with the district attorney about the propriety of making the complaint. These facts were all before the jury upon the question as to whether he was instigated by *Mills* to make the complaint, and we think it was clearly incompetent for the witness to give his opinion as to what he would have done under a different state of facts. The question for the jury was not what the witness would have done, but what he in fact did do, under all the facts proved. He testified that he did not commence the action by reason of anything said to him by *Mills*. If he did not, then the plaintiff failed to make out his case, as the burden of proof was clearly upon him to prove that *Mills* caused the prosecution to be instituted. This declaration was not conclusive of that fact. The jury had the right to consider all the circumstances under which Hockert acted, and determine from them whether he testified truly when he stated that what was said by *Mills* did not induce him to make the complaint; and his opinion that he would have commenced the action just the same as he did had *Mills* never said anything to him, was a mere matter of opinion and not a fact, and was properly excluded.

There was a large number of objections to the introduction of evidence. Several objections were made to the testimony of the plaintiff's witnesses as to conversations had with *Mills* after the prosecution was commenced, tending to prove that *Mills* was the real prosecutor, as well as to prove that the prosecution was without probable cause. We are clearly of the opinion that the evidence objected to was admissible as tending to prove both the real issues in the case. If *Mills* was in fact the instigator of the prosecution, then the fact that Hockert, who made the complaint, might have had probable cause for making the same, is no defense for *Mills*, if he *(Mills)* had no probable cause, and acted maliciously. Had Hockert acted solely upon the information

furnished by *Mills*, he might have had probable cause for making the complaint against the plaintiff and causing his arrest; yet if *Mills*, when he gave the information which caused Hockert to act, knew that his information was false, and that there was no reasonable ground for believing the accused guilty, he would not be excused for setting the unfounded prosecution on foot.

The evidence as to the value of the wheel was, we think, competent as tending to show malice in arresting the plaintiff on a charge for stealing property worth several hundred dollars, when, in fact, such property was not worth more than from two to five dollars.[1]  The question as to the ownership of the property alleged to have been stolen was also material; especially in view of the statement of the defendant that he instituted the suit to determine that question, and establish his right to the same.   It is claimed that it was error to exclude the record of the proceedings before the justice.   It is said that the determination of the justice, that there was probable cause to believe the plaintiff guilty of the offense charged against him, made out a *prima facie* defense for the defendant in this action.   If it did, then the pleadings showed such defense, as that fact was set out both in the complaint and answer, and there was no necessity of making proof of it on the trial.   The judge was not requested to instruct the jury as to what weight this admitted fact should have in determining the question of probable cause.

There is but one other question as to the admissibility of evidence on the part of the plaintiff which was objected to by the defendant, which we deem necessary to consider.   On the trial the plaintiff was allowed to give evidence of his

---

[1] The complaint upon which the plaintiff was arrested charged that he feloniously stole, took, and carried away one large water-wheel of the value of $300.   The evidence tended to show that the wheel was, at the time, worthless except for old iron.— REP.

previous good character, as a part of his case, and not in answer to an attack upon such character by the evidence of the defense. This evidence was all objected to by the defendant. Upon this question the authorities are somewhat in conflict. This court has not heretofore passed upon the question, and we are therefore at liberty to adopt the rule which seems to us the more reasonable. The question seems to us to be this, In determining the probability of the guilt of a party charged with a crime has his previous good character any bearing upon the question? We think this question must be answered in the affirmative. The fact that it has weight in determining the question of guilt in all cases where there is any doubt of the guilt of the accused party, is the basis of the rule in criminal actions that the defendant may, in all such cases, and perhaps in all cases, give in evidence his previous good character. The fact that he has such character is some evidence, and often very conclusive evidence, of the innocence of the accused. When, therefore, a person is about to make a criminal complaint against a citizen of previously known good character and reputation, it is reasonable that he should consider that fact with the other facts and circumstances in determining the question of the probability of the guilt of the accused. If I lose my horse under circumstances which indicate that he has been stolen, and shortly after he is found in the inclosure of a man who has the reputation of being a horse-thief, I might have probable cause for believing that that man had stolen him; but if he was found under like circumstances in the inclosure of a man whom I knew to have sustained a good reputation for many years, there would be a question, at least, whether I would have probable cause to believe such man guilty of the theft. There are many cases which hold that, in a civil action, the character of the plaintiff is not in issue until the same is attacked by the defendant, and that until so attacked it is presumed to be good, and therefore there is no necessity

or propriety in giving affirmative proof of such character. This, as a general rule, is undoubtedly the true rule; but in an action for the malicious prosecution of a criminal action, where the main question in the case is whether the defendant had probable cause for instituting such proceedings, an exception should be made. In such action the plaintiff must prove a negative,— that is, prove that the prosecutor did not have probable cause to believe him guilty of the offense charged; and, as bearing upon that question, he ought to be permitted to give evidence of his previous known good reputation. The following authorities are cited as sustaining our views on this question: *Blizzard v. Huys*, 46 Ind. 166; *Israel v. Brooks*, 23 Ill. 575; *Wade v. Walden*, id. 425; *Miller v. Brown*, 3 Mo. 127; *Bacon v. Towne*, 4 Cush. 217, 240; *Rodriguez v. Tadmire*, 2 Esp. 721. In the case of *Bacon v. Towne*, cited above, Chief Justice Shaw says: "The same facts which would raise a strong suspicion in the mind of a cautious and reasonable man against a person of notoriously bad character for honesty and integrity, would make a slighter impression if they tended to throw a charge of guilt upon a man of good reputation."

It is said that the evidence does not show that *Mills* had any knowledge of the previous good character of the plaintiff when the criminal proceedings were instituted against him. The evidence does, however, show that *Mills* had known the plaintiff for several years before the prosecution was commenced, and, in the absence of any testimony showing the contrary, we must presume that he knew his reputation among his neighbors.

There are a great number of exceptions taken to the refusal of the court to instruct the jury as requested by the defendant, as well as to the instructions given by the court. Most of the instructions refused bear upon the question whether Hockert, the complaining witness, had probable cause to make the complaint as he did, and not upon the

Woodworth vs. Mills.

question as to the good faith of the defendant, *Mills*, in setting on foot the prosecution, if it was found that he did so set it on foot. After a careful reading of the instructions given by the court to the jury, we think, with one exception noted below, all the questions upon the main issue in the case were fairly submitted. The court very pointedly told the jury that the burden of proof was upon the plaintiff to show (1) that *Mills* was in fact the real prosecutor of the criminal proceedings against the plaintiff, and that, without his interference, such proceedings would not have been instituted; and, (2) that when such prosecution was so set on foot by *Mills*, he *(Mills)* had no probable cause for believing the plaintiff guilty of the crime charged against him. The court also gave the jury the true meaning of the phrase "probable cause," and stated what facts tended to establish such probable cause, and what facts would tend to show a want of probable cause.

There are certainly no errors in the charge of the court prejudicial to the rights of the defendant, unless the contention of the learned counsel of the appellant that no recovery can be legally had in this action if there is sufficient evidence in the case to establish the fact that Hockert had probable cause for making the complaint and causing the defendant's arrest, is the law which must govern the rights of the parties in this action. This seems to have been the theory upon which the defense was conducted in the court below, and if that be the true theory, then the judgment should be reversed on account of the inconsistent instructions given by the court to the jury upon that point. The record discloses the fact that at the request of the defendant the learned circuit judge instructed the jury in the first place that, "in order to entitle the plaintiff to recover in this action, the jury must be satisfied from all the evidence in the action that Mr. Hockert, the complainant in the criminal action, did not have probable cause to believe this plaintiff, *Wood-*

*worth*, guilty of the offense with which he charged him."
Afterwards, in the general charge to the jury, he says: "It
will be borne in mind that the question is whether the
defendant, at the time it is alleged he procured the com-
plaint to be made, had probable cause for his acts. It might
be that Hockert, at the time the complaint was made, did so
in good faith and with probable cause, and yet the defend-
ant might be guilty, for it might be that the advice and
suggestions of defendant was what induced Hockert to be-
lieve he had probable cause." These propositions are hardly
consistent with each other, and both cannot be good law
unless the rule in the cases of this kind is that when one
instigates a criminal prosecution and another makes the
complaint upon which the arrest is made, and the action is
brought against the instigator of the prosecution, no recov-
ery can be had unless there was a want of probable cause
shown as to both parties. We think the court stated the
true rule in his general charge, and that if the proof satisfied
the jury that *Mills* instigated and set on foot the criminal
prosecution, and that without his interference it would not
have been instituted, then if *Mills* had no probable cause to
believe the plaintiff guilty of the offense charged against
him, a recovery could be had against him, although Hockert,
the man who made the complaint, might have had probable
cause for his action at the time the complaint was made.
See *Miller v. Milligan*, 48 Barb. 30. This case was similar
to the case at bar in its main features and as to the evidence,
and the court sustained the action upon the rule above
stated.

It seems to us that any other rule would work great in-
justice. To illustrate, let us take a very bald case: One man,
having malice against another, takes the horse of a third at
night from the stable or inclosure of such third person and
puts him in the inclosure or stable of the man against whom
he entertains malice. The circumstances of the taking are

such as to induce an ordinarily reasonable man to believe the horse was stolen. The man who removed the horse from the owner's stable or inclosure goes to the owner and informs him that shortly after the horse was missing he was informed by A., B., and C. that the horse was seen in the inclosure of the person against whom he entertains malice, and, acting upon such information, a criminal prosecution is commenced by the owner against the person in whose inclosure he was found. Clearly, in such case, the person making the complaint might be entirely justified in what he did, and yet the malice and want of probable cause on the part of the person who set him in motion would be perfectly apparent. The true rule is stated by Mr. Townshend in his work on Slander and Libel, § 428, p. 715. He says: " Although the facts known to the prosecutor may make out a *prima facie* case of guilt against the plaintiff, yet, if the prosecutor does not believe the plaintiff to be guilty, he acts without reasonable and probable cause." And certainly, when the prosecutor or person instituting the prosecution knows that the suspicious circumstances against the accused are all consistent with his innocence, and he knows the accused is not guilty, he cannot have reasonable cause for his prosecution. See *Turner v. Ambler*, 10 Q. B. 252; *Broad v. Ham*, 5 Bing. (N. C.), 722; *Fagan v. Knox*, 1 Abb. (N. C.), 246, 248. In the last case cited, CHURCH, C. J., says: " But, however suspicious the appearances may be from existing circumstances, if the prosecutor has knowledge of facts which will explain the suspicious appearances and exonerate the accused from a criminal charge, he cannot justify a prosecution by putting forth the *prima facie* circumstances, and excluding those within his knowledge which tend to prove innocence."

This view of the case shows the pertinence of the evidence of the admissions of the defendant, testified to by some of the plaintiff's witnesses, made after the prosecution was instituted. These admissions, if made and satisfactorily

proved, tended strongly to show that the defendant, *Mills*, did not believe the plaintiff guilty of the larceny charged against him, even though there were circumstances which, to an ordinarily reasonable person, tended to prove his guilt.

The exception taken by the defendant, that upon the whole evidence the question of probable cause was a question of law and not of fact for the jury, was clearly not well taken. The questions of fact, from which a want of probable cause on the part of *Mills* might be found, were not admitted by *Mills*, nor were they established by undisputed evidence. It was therefore properly submitted to the jury to find what the facts were, and when so found to apply the law as given by the court in determining whether a want of probable cause had been established by the testimony. *Fagan v. Knox, supra.* The fact that the first instruction given at the request of the defendant is inconsistent with that afterwards given in the general charge, is no ground for reversing the judgment, as we are clearly of the opinion that the instruction first given, which is most favorable to the defendant, was erroneous. The defendant cannot take advantage of an erroneous instruction given at his request.

On the whole, we find nothing in the record which shows that the appellant has not had a fair trial in the circuit court, and we cannot say that there is no evidence to support the findings and verdict of the jury.

*By the Court.*— The judgment of the circuit court is affirmed.